FILED'05 SEP 28 12:05USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CALVIN CHARLES, | ) |
| Petitioner, | ) Civil No. 97-437-TC |
| v. | ) FINDINGS AND |
| | ) RECOMMENDATION |
| MANFRED MAASS, | ) |
| Respondent. | ) |

COFFIN, Magistrate Judge.

Presently before the court is the amended petition for habeas corpus relief (#50).

## BACKGROUND

Petitioner, while serving, <u>inter alia</u>, two concurrent life sentence with a thirty-year minimum term of imprisonment for two counts of aggravated murder, was charged in 1990 with supplying contraband and possession of a controlled substance after Oregon State Penitentiary officials alleged that they had observed him dealing drugs in the facility. In January 1991, a month before petitioner's

1 - FINDINGS AND RECOMMENDATION

trial, his court-appointed counsel sought permission to withdraw, which was denied. On February 19, 1991, the first day set for petitioner's trial, counsel again asked the court to relieve him and to appoint another attorney, noting that petitioner continued to request that he withdraw. The court offered petitioner two choices: he could stick with existing counsel, or he could represent himself. Ultimately, petitioner represented himself during the trial, although the court ordered his appointed attorney to remain near him in the courtroom in case petitioner wanted to consult with counsel.

Petitioner was found guilty on both charges, which were merged for sentencing. Petitioner was sentenced to sixteen months of imprisonment to be served consecutively with his life sentences on the murder convictions, along with an additional twenty-four months of post-prison supervision.

Petitioner appealed the conviction, challenging the court's acceptance of his waiver of the assistance of counsel. The Oregon Court of Appeals affirmed the conviction without opinion,[1] and the Oregon Supreme Court denied review.[2] Petitioner filed for post-conviction relief, but the PCR court found that he had failed to file within the time limits provided for by Oregon statute, and granted the state's motion for summary judgment.[3] Petitioner appealed the decision of the PCR court, but the Oregon Court of Appeals affirmed without opinion,[4] and the Oregon Supreme Court denied review.[5]

In 1997, petitioner filed the instant action, seeking habeas corpus relief pursuant to 28 U.S.C.

---

[1] State v. Charles, 114 Or. App. 439 (1992).

[2] State v. Charles, 314 Or. 728 (1992).

[3] PCR Judgment (#39, Ex. 123) at 1-2.

[4] Charles v. Maass, 136 Or. App. 618 (1995).

[5] Charles v. Maass, 324 Or. 18 (1996).

2 - FINDINGS AND RECOMMENDATION

§ 2254. In his amended petition, petitioner asserts three grounds for relief: that he was denied his Sixth Amendment right to counsel during his trial; that he was restrained during his trial in violation of the Fifth Amendment; and that to the extent the state alleges that petitioner's relieved counsel was acting as counsel for petitioner, counsel's assistance was ineffective such that petitioner's Sixth Amendment right to counsel was violated.[6]

## APPLICABLE LAW ON DEFERENCE TO STATE COURT DETERMINATIONS

Petitioner filed his original petition for habeas corpus relief after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, AEDPA applies to the review of his petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations need not be deferred to in every case. See Williams v. Taylor, 529 U.S. 362, 389 (2000)("If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that

---

[6]The state's responsive briefing does not seem to make this suggestion, but rather attacks this claim on its merits and on procedural bars to petitioner raising it. Regardless, I find that, because the state concedes that petitioner represented himself at the trial, this claim is not triggered, and need not be addressed.

3 - FINDINGS AND RECOMMENDATION

independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.

Williams, 529 U.S. at 386 (citation omitted).

The Williams court also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law set forth in Supreme Court caselaw; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision yet the court nevertheless arrived at a result different from the Supreme Court precedent. Id. at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13.[7] The evaluation of reasonableness is tested against an objective standard. Id. at 409-10. The Court also noted that:

> [T]he most important point is that an unreasonable application is different from an incorrect application of federal law . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

---

[7] The Court has also noted that a state-court decision may be an unreasonable application of clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Remdass v. Angelone, 530 U.S. 156 (2000).

4 - FINDINGS AND RECOMMENDATION

Id. at 410-11 (emphasis in original).

In any event, however, a federal court may not grant habeas relief where there is an "adequate and independent" state law ground justifying the state's denial of the requested relief. Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977). Two such grounds are the doctrines of exhaustion and procedural default. See Franklin v. Johnson, 290 F.3d 1223 (9th Cir. 2002).

## APPLICABLE LAW ON EXHAUSTION AND PROCEDURAL DEFAULT

A state prisoner must exhaust available state court remedies on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 9 (1992). Exhaustion is required by statute. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement of § 2254, habeas petitioners must 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), as modified by 247 F.3d 904 (9th Cir. 2001) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).

If a habeas petitioner fails to properly exhaust a claim, it may be procedurally defaulted. A claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Should any of petitioner's claims here be unexhausted, they would be procedurally defaulted because they cannot now be presented to the state court. See Or.Rev.Stat. § 138.071.

///

///

5 - FINDINGS AND RECOMMENDATION

## DISCUSSION

I. **The state court determination that petitioner's waiver of counsel was knowing and voluntary is due deference, and all other claims in his first ground for relief were procedurally defaulted.**

Petitioner asserts under this ground that: (a) he was deprived of an attorney when counsel was permitted to withdraw the morning of trial; (b) he never unequivocally expressed his waiver of the right to counsel; (c) that any waiver was not knowing and intelligent; (d) that the court failed to ensure that the waiver was knowing and intelligent; and (e) that if he were going to proceed pro se, he should have been given additional time to prepare his defense. Amended Petition (#50) at 4-6.

Petitioner has only fairly presented claim (c) to the state courts. That claim, and that claim alone, was presented to the state court on direct appeal. See Appellant's Brief (#39, Ex. 104) at 4-6 (alleging solely that "the record does not establish that defendant's decision to represent himself was the product of an intelligent and competent choice."). Although petitioner attempted to raise additional claims related to the waiver in his post-conviction petition, that petition was rejected as untimely, which operates as a bar to the court's consideration of the claims contained in it. As such, it was not fairly presented to the state courts, and the claims have been defaulted.[8]

As to the question of whether petitioner's waiver was knowing and intelligent, the determination of the state court is due deference. Although petitioner properly notes that because the state courts' determinations were not accompanied by any written or oral analysis, this court

---

[8]Petitioner argues strenuously that the state courts erred in considering his PCR claims time barred, noting that a separate state trial court had granted him an extension of time to make his PCR filing. However, the interpretation of Oregon's limitations statutes is a question for the Oregon courts, and the appellate courts that considered the question ruled against him.

6 - FINDINGS AND RECOMMENDATION

conducts an independent review of the issue,[9] the court nonetheless is obligated to give deference to the ultimate decision of the state court. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Here, the appellate courts determined, by necessary implication, that petitioner's waiver was voluntary and intelligent. This court's obligation, therefore, is to determine whether that decision was contrary to, or an unreasonable application of, United States Supreme Court law.

Although criminal defendants enjoy the constitutional right to counsel, Gideon v. Wainwright, 372 U.S. 335 (1963), there is no constitutional requirement that a defendant be represented if he chooses to represent himself. Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Indeed, trial courts are required to allow a defendant to proceed pro se if he voluntarily and intelligently chooses to do so. Faretta v. California, 422 U.S. 806, 835 (1975). As noted by the Supreme Court in Faretta:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and is choice is made with open eyes.

Id. at 835 (citations and internal quote marks omitted). See also Patterson v. Illinois, 487 U.S. 285, 298 (1988) (noting that an accused's waiver is knowing when he is made aware of the usefulness of counsel and the dangers of proceeding without counsel). Petitioner bears the burden of proving that the waiver was not knowingly and intelligently made. Iowa v. Tovar, 541 U.S. 77, 92 (2004).

Here, petitioner has not met that burden. I find that the state court's decision that petitioner

---

[9]See, e.g., Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

7 - FINDINGS AND RECOMMENDATION

was adequately advised of the dangers of proceeding without counsel was not contrary to, nor an unreasonable application of, Faretta and related Supreme Court caselaw.

Upon calling petitioner's case for trial, the first matter the court took up was the question of whether counsel would continue to represent petitioner. Upon the prosecutor noting that counsel had an issue for the court, counsel, the court, and petitioner had the following colloquy:

> THE COURT: Mr. Rockwell?
>
> MR. ROCKWELL: Sure. If the court recalls, I approached you sometime ago - I believe the first part of January - and asked permission to withdraw from this case and appoint another attorney to represent Mr. Charles.
>
> You advised me at the point that you would consider to permit me to withdraw but you would not consider appointing another attorney to represent Mr. Charles based upon the representations I had made at that time so as to why I needed to withdraw from the case.
>
> At this time - I spoke to Mr. Charles yesterday, and at this time, he continues to request that I withdraw; and, therefore, I ask the Court to consider allowing me to withdraw as Mr. Charles' attorney.
>
> THE COURT: Well, if you were to withdraw, the same ruling would be in effect. Mr. Charles, I certainly will not appoint another attorney for you.
>
> THE DEFENDANT: That's fine with me, Your Honor.
>
> THE COURT: All right. Do you understand really what you're doing here? You're placing yourself before twelve persons over here without any legal background to represent yourself.
>
> THE DEFENDANT: Well, Your Honor -
>
> THE COURT: Now, just a minute. Let me finish. Now the court has appointed Mr. Rockwell to represent you because he's an accomplished criminal defense attorney and, obviously, you are not. And you know the old adage that he who represents

8 - FINDINGS AND RECOMMENDATION

|                | himself has a fool for a client. |
|---|---|
|                | Well, that couldn't be more in effect right now. And when I refer to you as a fool, I only refer to you in that respect as being - it being obvious you don't have the education or the background or the ability to represent yourself like Mr. Rockwell can. |
|                | So I want to give you every opportunity to proceed with this trial today. We will proceed with the trial no matter what your choice is, but - and you obviously have a right to represent yourself, but you can't possibly do nearly the job for yourself that Mr. Rockwell can do for you. |
| THE DEFENDANT: | Your Honor, regardless of what the decision is that you make on this, Mr. Rockwell cannot defend me properly. And we have had several months, since June 8th, 1990, to go over this case; and due to the nature of the defense, he's unwilling to cooperate with me. |
| THE COURT: | Why don't you tell me for a moment what your defense is? |
| THE DEFENDANT: | Well, basically, he had an investigator and the investigator didn't follow through with all the information I gave him. And there are several other things in there that Mr. Rockwell did not want to pursue so, basically, I'd just be - I'd be a fool to oppose the Court here. |
| THE COURT: | Now, did you hear my question? My question is, what would your defense be and what would the investigator have been charged with investigating? |
| THE DEFENDANT: | Like you said, Your Honor, I don't have the legal skills to determine that. And I'm just going to set [sic] through this trial and just be mute; and you guys do what you will and that is the way it will come out anyhow. I don't want to oppose the Court or anyone else here and make anyone angry at me, so you just do what you will. |
| THE COURT: | I hope you're not interpreting my remarks as showing any anger towards you. I'm not angry with you, I'm just explaining what - |

| | |
|---|---|
| THE DEFENDANT: | Your Honor, regardless what happens in this trial, they are going to find me guilty anyway, and regardless if I was innocent right now. And they're still going to find me guilty. |
| THE COURT: | That's your interpretation of it, of what this trial will be. I'm trying to get you to tell me what your defense is and, therefore, why Mr. Rockwell can't adequately represent you. |
| MR. ROCKWELL: | Your Honor, I think that there were several witnesses that Mr. Charles had given the names of or potential witnesses to Mr. Steven Burns who's the investigator I obtained the services of. |
| | I think to some degree, the purpose of the witnesses would establish that Mr. Charles because of his heritage is discriminated against. Himself and other members of his family and other native American indians are discriminated by the guards. And the guards engage in inappropriate behavior sometimes solely for the purposes of implicating the defendant and other native Americans in criminal activity which they have not in fact engaged in. |
| | I guess to some degree, that it would be that the drugs in this particular case were planted on Mr. Charles by someone who in his - some official capacity in the institution, or at least an inmate acting at the request of an official at the institution. |
| THE COURT: | And if I recall correctly, I did authorize expense money for a trained criminal investigator at least once. |
| MR. ROCKWELL: | Well, Your Honor, and the investigator did contact some of the people Mr. Charles provided with some other information to substantiate the claim of discrimination against himself at least. I guess the major problem is I was at somewhat of a loss under the - some of the other evidence that I had available to me as to why that would necessarily be a defense of this particular charge and under some other evidence that was available. |
| THE COURT: | All right. While we are talking about other orders of the Court, I notice and I recall now that, Mr. Rockwell, you did file on behalf of your client a motion to disqualify me as a judge in the case and that motion was denied for the reason that it was not timely. |

10 - FINDINGS AND RECOMMENDATION

|THE COURT: | And that this case was assigned to this court on July 21st, 1990. And I have signed orders, other than orders for continuance, in the meantime and, therefore, the motion to disqualify is not timely or in accordance with the statute. Do you understand that, Mr. Charles?|
|---|---|

THE DEFENDANT: (Nodding yes)

THE COURT: Answer out loud, please.

THE DEFENDANT: Yes.

THE COURT: . . . I also note that there was a motion for continuance, also filed by Mr. Rockwell on your behalf on February 7th. However, it's dated February 5th. And that your reason for wanting a continuance was that you wanted 60 more days in order to fully investigate the case as such.

And my determination on that was that you've already had eight months - seven-and-a-half or seven months anyway to develop your case. And a criminal case gets very old after that time. So I would not continue the case, particularly since you had no specific and only a general reason for asking for the continuance, so I've denied that motion.

So pulling all these together, the Court will hold this trial today. I will be the judge. It will not be continued. You may represent yourself if you wish, but I'm directing Mr. Rockwell to sit beside you and remain available to you as counsel should you have any questions.

THE DEFENDANT: I just got one statement to say here. I'm going to have Mr. Rockwell sign this paper. It's - it's got some statements on it that what we discussed and which he didn't want to pursue; and if he does sit through this trial, he's going to be jeopardizing his career.

THE COURT: Well, do you expect him to sign that paper no matter what it says?

THE DEFENDANT: I do, yes, if he's going to stay here.

THE COURT: I don't expect him to sign anything that you have for him to

11 - FINDINGS AND RECOMMENDATION

|                  |                                                                                                                                                                                                                                          |
|------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | sign.                                                                                                                                                                                                                                    |
| THE DEFENDANT:   | Excuse me. If I'm going to sit here and receive a sentence to prison again, than I think someone ought to be responsible for that. If he's not able to represent me properly, represent me, Your Honor -                                 |
| THE COURT:       | We are here to decide. The jury is going to decide whether you are responsible for that or not. And if you are responsible for it in their opinion, then there won't be any sentence. You understand that?                               |
| THE DEFENDANT:   | I don't believe that. I don't believe a single word. I'm sorry.                                                                                                                                                                          |
| THE COURT:       | Well, we are going to - you can be seated if you wish. I've made my rulings. We will proceed today and Mr. Rockwell will remain available to should you request his services.                                                            |

Transcript (#39, Ex. 102) at 2-9. It is apparent from the record that: (a) petitioner did not want appointed counsel to represent him; (b) the court informed him of the hazards of proceeding without counsel, but advised that he would not appoint another attorney for petitioner; and (c) that petitioner chose to proceed unrepresented rather than have the counsel then appointed to him represent him. That petitioner so chose is further demonstrated by a discussion that took place shortly after the above proceedings, when the court, prior to bringing the jury in for jury selection, was considering some jury instructions and a verdict form that had been prepared by the state:

| THE COURT:     | All right. All right. I'm going to continue to do this, what I'm about to do, Mr. Charles. I'm going to keep asking your legal advisor, Mr. Rockwell, if you have anything to offer at this time before the jurors are admitted to the courtroom. |
| THE DEFENDANT: | Your Honor, I do not consider -                                                                                                                                                                                                                    |
| THE COURT:     | Just a minute. Let me ask him. Do you have anything, Mr. Rockwell?                                                                                                                                                                                 |
| MR. ROCKWELL:  | I don't, Your Honor. Maybe Mr. Charles has something.                                                                                                                                                                                              |

12 - FINDINGS AND RECOMMENDATION

> THE DEFENDANT: Your Honor, I do not consider Mr. Rockwell to represent me.
>
> THE COURT: I'm considering him as your legal advisor available should you want to consult with him.
>
> THE DEFENDANT: I'd like it placed on record that Mr. Rockwell is not representing me. He's not my attorney. He's not my lawyer.
>
> THE COURT: I know you've said that and the Court is well aware of that.

Id. at 27-28. Finally, after the court brought in the jury panel, the court inquired if the parties were ready to proceed:

> MR. DINGLE: The State's ready to proceed, Your Honor.
>
> THE COURT: And, Mr. Charles, you choose to represent yourself. Are you ready to proceed in this case?
>
> THE DEFENDANT: It's not of my owning choosing to represent myself.
>
> THE COURT: Pardon?
>
> THE DEFENDANT: It's not of my owning choosing to represent myself.
>
> THE COURT: On the contrary -
>
> THE DEFENDANT: I may proceed on myself, Your Honor, yes.

Id. at 29-30.

Ultimately, it is clear that petitioner was advised of the hazards of self-representation, and chose that option rather than accept an attorney who he did not feel could adequately represent him. There is no question that petitioner chose that option reluctantly. However, the court inquired into the specifics of the purported deficiencies in counsel's ability to represent him, but petitioner never clearly articulated what those deficiencies were. It was apparent to the court due to counsel's disclosure that they involved counsel's unwillingness, based on his investigation and petitioner's

13 - FINDINGS AND RECOMMENDATION

statements to him, to assert a defense based on purported discrimination against petitioner by the guards at the institution. Although a defendant has the right not to be forced to proceed represented by counsel "with whom he has become embroiled in irreconcilable conflict," Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970), if the court inquires into the specific of the conflict and determines that the conflict is of the defendant's own making, or is the result of counsel making decisions committed to his discretion (such as the tactics of putting on the defense) that the defendant may disagree with, his Sixth Amendment rights are not violated by the court failing to appoint new counsel. See Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc). There is no showing that the trial court violated petitioner's Sixth Amendment rights when it decided, after inquiry, not to appoint new counsel for petitioner. And the state court's decision that petitioner, when faced with that decision, then knowingly and voluntarily decided to proceed pro se rather than represented by appointed counsel is not contrary to, nor an unreasonable application of, Faretta, Patterson, or Tovar. As such, this ground for habeas relief should be dismissed.

## II. Petitioner's second claim for relief is procedurally defaulted.

Petitioner, as his second ground for relief, contends that he was unlawfully restrained during his trial in violation of his rights under the Fifth Amendment.

As was the case for the bulk of his claims under his first ground for relief, this claim was not exhausted in state court and is now procedurally defaulted. Petitioner failed to raise the issue on direct appeal, which would have been the proper venue under Oregon law.[10] Although he did raise the issue in his petition for post conviction relief, as described above, that petition was determined by the state courts to have been filed after the limitations period expired, and the merits of the

---

[10]See Oregon Rule of Appellate Procedure 5.45.

petition were not considered. As such, the issue was never presented to the state courts for consideration, has not been exhausted, and, because petitioner cannot now exhaust it, is procedurally defaulted. This ground for relief should be denied.[11]

### III. Petitioner's third ground for relief is unavailing.

Petitioner last argues that, in the event respondent relies on the existence of "stand-by" counsel for petitioner to defend the propriety of his conviction, such counsel was ineffective. However, the state did not so contend, and my reading of the record, and the premise of my earlier analysis, is that petitioner was unrepresented during his trial. As such, the "adequacy" of petitioner's appointed attorney - who was there for petitioner's benefit should petitioner choose to use him, which he did not - is not a relevant issue before this court. Relief on this alternative claim should be denied.

### CONCLUSION

Relief on all grounds in the petition before the court should be denied, and the petition should be dismissed.

DATED this 28th day of September, 2005.

Thomas M. Coffin
United States Magistrate Judge

---

[11] I do note that, prior to ruling that petitioner would be restrained during his trial, the court did consider the issue at some length, allowing three witnesses to testify as to the necessity of the restraints and allowing petitioner to cross-examine those witnesses, which he did. Because the issue was procedurally defaulted, however, I do not need to examine the adequacy of the court's inquiry.

15 - FINDINGS AND RECOMMENDATION